[Civ. No. 28606. First Dist., Div. Two. Mar. 23, 1972.]

WEST VALLEY FEDERATION OF TEACHERS, LOCAL 1953, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, Plaintiff and Appellant, v. CAMPBELL UNION HIGH SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

Levy & Van Bourg, Stewart Weinberg and Victor J. Van Bourg for Plaintiff and Appellant.

William M. Siegel, County Counsel, and Leland D. Stephenson, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**KANE, J.**—In this case we are called upon to decipher and declare the legislative intent with respect to a narrow question arising under the Winton Act.[1] (Ed. Code, § 13080 et seq.)

The question may be stated as follows: Where multiple certificated employee organizations exist and a negotiating council has been formed as required by law to represent such multiple certificated employee organizations, is the governing board of a school district required by law to hear direct oral presentations by individual certificated employee organizations?

---

[1]Unless otherwise indicated, all references hereinafter will be made to the Winton Act as it read at the time of the petition. The legislative amendments to said act took place in 1970.

For reasons which follow we concur with the trial court which answered this inquiry in the negative.

Appellant is an employee organization representing certificated high school teachers employed by respondent. Appellant, however, is only one of a number of certificated employee organizations in the district. It is therefore subject to the provisions of the Winton Act, which provide inter alia that where there is more than one certificated employee organization, a negotiating council shall be appointed to represent all the certificated employees in the district (§ 13085). Under the statutory scheme, the negotiating council shall have not more than nine nor less than five members who are to be appointed by the participating unions according to a ratio formula.

Since appellant is a minority organization which is not a participant on the negotiating council, it has tried to make direct presentations at respondent's public board meetings. Respondent refused to place on its agenda matters with respect to which it must meet and confer with the negotiating council (§ 13085), and has disallowed requested oral presentations as to the same matters without prior consideration by the negotiating council.

Thereupon, appellant petitioned for and was granted an alternative writ of mandate ordering respondent to allow direct presentations to its board. Respondent filed a demurrer and answer to appellant's petition. The trial court sustained the demurrer without leave to amend, discharged the alternative writ and denied the peremptory writ.

While both parties point to and rely upon *California Federation of Teachers* v. *Oxnard Elementary Sch.* (1969) 272 Cal.App.2d 514 [77 Cal. Rptr. 497], we are satisfied that a careful analysis of that epic decision supports respondent and the decision of the learned trial judge.

*Oxnard,* also involving mandamus, is a veritable treatise on the history, scope, intent and constitutionality of the Winton Act. Within the breadth of that decision one finds the precise arguments of appellant carefully considered, analyzed, and rejected. It would, therefore, serve no useful purpose to extend this opinion with a detailed discussion of the various contentions.

The major thrust of appellant's contention is that the Winton Act should be read so as to draw a sharp distinction between the process of "meet and confer" and the mere "right of making proposals directly to the school board."

This contention flies in the face of the fundamental objective of the Winton Act, expressed in *Oxnard* at pages 534-535 and again at pages 536 and 537-538, as follows:

"It must be recognized, as the trial court observed, that 'the [L]egislature expected that the employment of this medium for negotiation would effectuate a time saving to the employer in not having to meet and confer separately with two or more employee organizations; would also relieve the employer from having to deal with divergent viewpoints and to perform the difficult task of weighing and resolving inter-organizational disputes . . .; would eliminate the possibility of an employer playing one organization off against another and coming up with nothing particularly constructive for the benefit of the employees; and, finally, would better facilitate a continuing and result-securing course of conferring compared with what had been experienced in the past under the wide open negotiation program featured by occasional concentrated campaigns and confrontations generated for the purpose of achieving employment goals. . . .' It is not the duty of the courts to evaluate the wisdom of specific legislation. *We must assume that the Legislature expected honest, sincere compliance and earnest consideration by negotiating council members of the minority organization's ideas and programs,* and that if the system is abused, the Legislature will amend or repeal the statute." (Pp. 534-535.)

*"The enacted legislation in the present case reconciles the interest of employees in freedom of association in minority organizations with the governmental interest in dealing effectively with employer-employee relations in the public school system without unconstitutionally suppressing or jeopardizing individual rights."* (P. 536.)

*"The affirmative compulsion for employee organizations to meet with the negotiating council to confer and urge the adoption of their ideas is implicit in the requirement that 'Employee organizations shall exercise the rights given by Section 13083 through the negotiating council provided for in this section.'* (Ed. Code, § 13085) . . .

*"Insofar as appellants base their claim upon the prohibition of the employee organization to present the position of its membership as a whole to the governing board in relation to employment relations or educational objectives, we have earlier determined that the creation and use of the negotiating council does not . . . violate any constitutionally protected interests of appellants."* (Pp. 537-538. Italics added.)

As pointed out in *Oxnard,* a minority employee organization such as appellant here is not precluded from presenting proposals to the employer.

Respondent has not refused appellant that right. It has simply directed that such proposals be referred to the negotiating council.

Appellant misconstrues the first paragraph of section 13085 wherein it seizes upon the last sentence which reads: "The designation of an administrative officer as provided herein shall not preclude an employee organization from meeting with, appearing before, or making proposals to the public school employer at a public meeting if the employee organization requests such a public meeting."

Section 13085 is the procedural heart of the Winton Act. The first paragraph obviously governs the procedure to be followed in those districts where an administrator or representative has been designated to meet and confer with employee organizations. In that situation the statute reserves the right of the employee organization to meet with, appear before, or make proposals to the employer at public meetings upon request. It clearly pertains to the situation where only one employee organization exists.

The second paragraph, however, is manifestly and emphatically applicable only "in the event there is more than one employee organization" in which case the negotiating council is the sole procedural conduit through which employee organizations may exercise their employment relation rights. It is significant to note that the only reservation of any right to directly appear before the board contained in the second paragraph of section 13085—"provided that nothing herein shall prohibit any employee from appearing in his own behalf in his employment relations with the public school employer . . ."—pertains only to the individual employee and not to an employee organization.

*Torrance Education Assn.* v. *Board of Education* (1971) 21 Cal.App.3d 589 [98 Cal.Rptr. 639], cited by appellant at oral argument, does not support its contention, either. The court in *Torrance* simply and, in our view, correctly held that the Winton Act in no way restricts or prohibits "school administrators discussing educational problems with teachers at a traditional teachers meeting." By the same token, teachers are not precluded by the act from discussing such subjects at faculty meetings. But this is totally irrelevant to the express procedural avenues which are affirmatively provided in section 13085 and by which employee organizations and the employer are bound.

Affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied April 21, 1972, and appellant's petition for a hearing by the Supreme Court was denied May 18, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.